## SPENCER LUMBER COMPANY v. MARSH.

Opinion delivered June 5, 1911.

AGENCY—RATIFICATION.—Where defendant knew that its agent had employed plaintiff to work for it, and recognized the agent's authority to engage employees to work for it, and accepted the benefit of plaintiff's work, and waited an unreasonable time, after demand for his wages by plaintiff, before repudiating his claim, a finding that plaintiff's employment was ratified will be upheld.

Appeal from Polk Circuit Court; *Jefferson T. Cowling*, Judge; affirmed.

### STATEMENT BY THE COURT.

Counsel for appellee states the facts as follows:

The appellant is engaged in the manufacture of lumber at Vandervoort, Polk County, Arkansas, and owns and operates a planer and several sawmills in that vicinity. At one of its mills Ed. Mathis was in charge and receiving for his services $5 and $5.50 per thousand feet for sawing and stacking the lumber at the mill yard, the appellant to furnish the timber. About May 1, 1910, Ed. Mathis hired appellee, Marsh, to haul logs at the mill of which he had charge at a certain price per thousand feet, and during that month his services for himself, his minor son and three or four men he had driving his teams amounted to $203.53. The pay day of the appellant, Spencer Lumber Company, was the first of each month, that is, the wages for the month of May would be paid the first of June. May 27th the appellee quit working, and a statement or an order on the Spencer Lumber Company was given by Mathis for the amount due him, and appellee then went to Oklahoma where he had another job. This order was sent by mail to the appellant by appellee June 10th, demanding payment; was received by the appellant, and no reply made to appellee. Two other letters were written the appellant by the appellee during June, and in neither case did the appellant reply to these letters.

On July 1st or 2d appellee took the train at Stanley, Oklahoma, where he was living, and went to Vandervoort to learn of the appellant why he did not receive his pay. He had an interview with Mr. Spencer, the manager of the appellant, and discussed the matter with him, and it ended with Mr. Spencer sug-

gesting that appellee go out and see Mr. Mathis. Appellee went out to see Mr. Mathis, who was working about eighteen miles from Vandervoort. Mathis returned to town with appellee, and together they went to see Spencer, and at this meeting was the first time Spencer told appellee that he would not pay him, and the reason given was that Mathis owed the Spencer Lumber Company between $100 and $200, and that it was due the company from a former set where Mathis had worked for it.

On July 4th appellee filed suit in the court of a justice of the peace in attachment, and asked that a laborer's lien be declared on the lumber, which at the trial was done, and a judgment for the amount against both the Spencer Lumber Company and Ed. Mathis was rendered in favor of the plaintiff.

The Spencer Lumber Company filed its affidavit for appeal, made bond, the appeal was allowed, and lien on the lumber released by the court and lumber delivered to the Spencer Lumber Company.

The case was tried anew in the circuit court, and a judgment rendered in favor of the appellee for $208.63, and from this judgment the Spencer Lumber Company appeals to this court.

There is no denial that $208.53 is the amount due Marsh for his labor, and that the lumber attached was sawed from the logs hauled by Marsh and his teams.

*Elmer J. Lundy,* for appellant.

There was not that privity of contract between appellee and appellant necessary to support a personal judgment. 8 Ind. App. 523; 34 N. E. 575; 115 U. S. 634, 29 Law. Ed. 505; 96 U. S. 421, 24 Law. Ed. 847. A contract will not be implied unless the contract is for the benefit of the person sought to be held and the work is done with his knowledge. 2 Page on Contracts, 1172, § 774; *Id.,* 1174, § 776; 9 Cyc. 242; *Id.* 252; 134 Cal. 244; 66 Pac. 304; 39 Mich. 345; 157 Mass. 410. A recovery on an implied contract is based on a fair and reasonable value of the services, and there must be evidence to that effect. 2 Ark. 370; 26 Ark. 360; 125 Ala. 428, 29 So. 327. There is no evidence on which to base a ratification of the contract. Ratification can be made only by the one for whose benefit the contract is made. 1 Am. & Eng. Enc. of L. 1182; *Id.* 1188, 1189; 9 Pet. 607, 9 L.

Ed. 246, 254; 11 Ark. 189; 29 Ark. 131; 143 Mass. 251, 9 N. E. 634; 153 Mass. 510, 27 N. E. 519.

*Wright Prickett,* for appellee.

1. The evidence justified the court in giving an instruction on an express contract, an implied contract and on ratification of the act of Mathis in hiring appellee. Spencer knew that Mathis was going to employ appellee; knew that the work was done when the pay roll was presented, with appellee's name at the head of the list. Appellant got the benefit of the labor, and knew that appellee had not been paid for his work. The evidence of ratification is ample. 29 Ark. 99; 55 Ark. 240; 31 Cyc. 1251; 80 Ark. 366. If the principal does not intend to be bound by the unauthorized act of his agent, he must repudiate the act within a reasonable time. 11 Ark. 189; 31 Cyc. 1275; *Id.* 1280.

2. From all the evidence the jury were warranted in finding that Mathis was appellant's agent with power to hire laborers whom Spencer would pay. "One may be an agent and not an independent contractor, though he is paid according to the amount of work accomplished. 31 Cyc. 1194; 106 Mo. 236, 80 S. W. 275; 31 Cyc. 1219-20-21; *Id.* 1247. The statement of Spencer to Mathis, "You owe us, and it is a matter with us whether we carry your pay rolls further or not," would imply that there had been a contract, and the jury were justified in so construing it.

WOOD, J., (after stating the facts). The court in effect instructed the jury that, before appellee could recover, they must find that there was a contract, express or implied, with appellant to pay him, or else that appellant, knowing that Mathis had employed appellee, ratified his act in so doing.

There was evidence to warrant the court in submitting these questions of fact to the jury and evidence to sustain the finding and verdict of the jury. Mathis had a contract with appellant for cutting timber. He informed appellant that he was going to employ the appellee. He said: "It was understood that appellant would pay all the men he had at that set." The appellant told him "to go ahead, and they would pay." He did not have any contract of that kind, and did not tell appellee that he had a contract of that kind. He did not know that appellant just came out and told him that they would pay his pay roll, but they

always had paid it. He supposed they gave checks to each individual man and charged it to his (Mathis's) account. Mathis was negotiating for the purchase of a tract of timber land for appellant. He testified concerning this in part as follows: He informed appellant that he (Mathis) had been telling appellee that appellant was going to buy the timber. "Then they (appellant) said, 'Ed., we are going to buy this tract of timber; you need it, and it looks like we have got to have it, and you can tell the man (meaning appellee) to go ahead.'" Mathis had appellee there "with a bunch of teams" to haul the timber. Mathis further testified: Appellant "always paid" his "pay rolls before." Appellee came the second month and went to logging; when he turned the pay roll in, it was a pretty big pay roll, and appellee's name was at the head of the pay roll. Mathis testified further as follows:

"I went in and handed Mr. Wertz, the bookkeeper, the pay roll. I don't think Mr. Spencer was in that day. The day I carried this pay roll in, Mr. Wertz ran over the pay roll, and copied it from my list, and figured it up, and he said: 'That is a pretty big pay roll this time.' And I said, 'Yes, this is a pretty big pay roll.' He called over the name (Mr. Marsh's name), and said, 'I will write these checks as I come to them.' And I said, 'Except Mr. Marsh; that he was gone over in Oklahoma, and he has a due bill for this amount, and he told me he would send the due bill to the Spencer Lumber Company and for him to mail the check, personally, direct to Mr. Marsh,' and he said: 'I will leave Mr. Marsh off.'"

It was shown that Wertz had charge of the books of appellant, and had authority to issue checks to pay off the pay roll. In a conversation witness had with Spencer, the latter said: "You owe us, and it is a matter with us whether we carry your pay rolls further or not."

Spencer, the manager of appellant, testified in part that the reason appellant did not pay appellee for the June pay roll was because it hadn't hired him and didn't feel that it owed him, but that Mr. Mathis owed it. Appellant had not hired the other men whom it paid. Appellant reserved the right to pay whom it wanted to. Appellant paid other men hired by Mathis, although Mathis owed appellant. It did not pay appellee because it was

not obligated to him, etc. The record shows the following occurred during the examination of witness Spencer:

"Q. Who does the writing of the letters? A. I do, mostly. Q. Do you remember getting a letter from Mr. Marsh? A. I remember seeing a letter. The letter came while I was away. Q. How long were you gone? A. I was gone a week. Q. Do you remember getting two or three letters? A. I remember getting two letters. Q. Do you remember three letters? A. I don't remember. Possibly so. Mr. Marsh says so. Q. Mr. Spencer, did you answer any of those letters? A. I couldn't tell you. I said I answered the letters. I didn't answer all. Q. You don't remember whether these letters were answered or not? A. No. Q. You knew at the time that he claimed this two hundred and three dollars. A. Yes. Q. Yet you failed and refused to reply to these letters? .A. When we fail to reply, it is like a whole lot of letters; laid aside in the desk and overlooked. Q. You are more apt to forget when the man is trying to get money out of you? A. Yes."

Appellant paid witness Smith, an employee hired by Mathis, after it had refused to pay appellee.

It could serve no useful purpose to further set forth in detail the evidence or to discuss it at length. We are of the opinion that the evidence warranted a finding by the jury that Mathis was authorized by appellant to employ appellee to do the work charged for, and hence was under obligation to pay him for same. The evidence was sufficient to warrant the jury in finding an express contract on the part of appellant to pay for his work. But, if we were mistaken in this, certainly the evidence warranted a finding that appellant ratified the employment of appellee by Mathis. Appellant knew that Mathis was going to employ appellee to cut and haul timber for it, and ratified the employment as shown when it received the benefit of his labor under the employment, and when it issued checks and paid others who were on the same pay roll employed in the same way, and when it at first proposed also to issue a check to pay appellee, and when afterwards, on demand of appellee by letter for the amount, it waited an unreasonable time to repudiate such claim. Under the circumstances this was evidence of ratification. *Lyon v. Tams,* 11 Ark. 189; 31 Cyc. 1275.

The instructions given by the court in its oral charge correctly presented the law applicable to the facts. There was no prejudicial error in any of the court's rulings in the admission or rejection of the evidence offered.

The judgment was right, and it is affirmed.